IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BRADLEY ELMENDORF,            )
                              )
        Plaintiff,             )
                              )
v.                            )      1:14CV697
                              )
DUKE UNIVERSITY,              )
                              )
        Defendant.             )

MEMORANDUM OPINION AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This matter comes before the Court on Defendant's Motion to Dismiss Counts Three and Four of Plaintiff's Complaint [Doc. #11]. For the reasons that follow, the instant Motion should be denied.

I.  FACTS, CLAIMS, AND PROCEDURAL HISTORY

Plaintiff Bradley Elmendorf ("Plaintiff" or "Mr. Elmendorf") alleges that he has been diagnosed with "the learning disabilities of Reading Disorder, also known as Dyslexia, and Mathematics Disorder." (Compl. [Doc. #1] ¶ 11.) According to the Complaint, Plaintiff "reads visually at a second grade reading level, does not read efficiently, and must exert great effort to keep his place while reading." (Id. ¶ 13.) However, Plaintiff "is able to raise his actual level of reading performance up to his expected level of achievement by listening to his reading assignments." (Id. ¶ 17.)

According to the Complaint, Plaintiff applied to, and was accepted at, the Master of Divinity programs at both Defendant Duke University ("Duke" or "Defendant") and

Princeton Theological Seminary ("Princeton"). (Id. ¶ 19.) The Complaint alleges that Princeton offered Plaintiff a scholarship that would pay his full tuition costs and an additional stipend, and private loans that would be fully forgiven after he served in the pastorate for five years. (Id. ¶¶ 20-21.) In contrast, Duke allegedly offered Plaintiff a less comprehensive scholarship package that would only partially cover his tuition. (Id.) However, when inquiring with both about their ability to accommodate his learning disabilities, the Complaint alleges that, at Duke, he met with staff in the Student Disability Access Office and with Divinity School staff, and "staff assured [Plaintiff] that Duke had experience accommodating individuals with Dyslexia and was fully prepared to provide him with accessible formats of all of his reading assignments, including those assignments distributed directly to students by professors," whereas, at Princeton, Plaintiff "was told that the Princeton Theological Seminary had not had prior experience accommodating an individual with Dyslexia, but would try to meet his needs." (Id. ¶¶ 23-24.) Accordingly, Plaintiff allegedly "chose to attend Duke and to incur additional out-of-pocket costs for his education based on Duke's assurances that it was able to fulfill his disability-related needs." (Id. ¶ 25.)

The Complaint alleges, however, that despite those representations, Duke failed to accommodate Plaintiff's learning disabilities after his enrollment. According to the Complaint, Plaintiff met with various representatives of Duke on multiple occasions in order to address deficiencies in his accommodations, yet Duke repeatedly failed to provide

2

Plaintiff's reading assignments in a format accessible to him. As a result, by the end of his first semester at Duke, Plaintiff was forced to take "incompletes" in three of his courses. (Id. ¶ 52.) The Complaint further alleges that, during his second semester at Duke, in order to avoid dropping out or taking a leave of absence, Plaintiff ultimately transferred to a shorter, one-year Master of Arts in Christian Studies ("MACS") program. (Id. ¶ 59.) Plaintiff alleges that he "remained at Duke out of necessity to mitigate the harm caused by the lack of accessible course material." (Id. ¶ 62.) That is, "[h]e could not transfer to another university while his transcript consisted primarily of incompletes, he could not pursue a Master of Divinity degree because he was no longer eligible for financial aid to complete that program, and he had to salvage his academic situation at Duke if he wished to pursue a marketable degree." (Id.) The Complaint further alleges that the MACS degree that Plaintiff was "limited to" pursuing "has negligible value in the job market." (Id. ¶ 91.)

As a result of these events, Plaintiff brings the following four claims for relief: (1) "Section 504 of the Rehabilitation Act" (id. ¶¶ 94-101); (2) "Title III of the Americans with Disabilities Act" (id. ¶¶ 102-09); (3) "Unfair or Deceptive Trade Practices" (id. ¶¶ 110-15); and (4) "Negligent Misrepresentation" (id. ¶¶ 116-22). Defendant now moves to dismiss claims three and four pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

3

II. <u>DISCUSSION</u>

    A.    Standard

A plaintiff fails to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678. Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

    B.    Unfair or Deceptive Trade Practices

To establish an unfair or deceptive trade practice in violation of Section 75-1.1, a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused injury to the plaintiff. <u>Dalton v. Camp</u>, 353 N.C. 647, 656 (2001). A practice is considered unfair if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive. <u>Id.</u>

Defendant contends that Plaintiff's unfair or deceptive trade practice act ("UDTPA") claim fails for two separate reasons. First, according to Defendant this claim "attempts to

4

shoe-horn alleged discussions concerning federal legal obligations regarding accommodations into a 'trade practice' within the meaning of North Carolina's UDTPA." (Def.'s Br. [Doc. #12] at 2.) Second, Defendant contends that, regardless, the Complaint fails to establish the essential elements of the claim because the conduct alleged was not "in or affecting commerce" and was not "unfair or deceptive."

With respect to the first contention, Defendant argues that North Carolina's UDTPA does not apply to "student support services." In support of this contention, Defendant notes that the UDTPA is not applicable to matters of internal corporate governance or internal employee-employer interactions. See, e.g., Wilson v. Blue Ridge Elec. Membership Corp., 157 N.C. App. 355, 357-58 (2003); Buie v. Daniel Int'l Corp., 56 N.C. App. 445, 448 (1982). Defendant also notes that other jurisdictions have recognized that internal support functions related to a university's educational mission, such as the administration of financial aid, would not fall under "trade or commerce." See Thornton v. Harvard Univ., 2 F. Supp. 2d 89 (1998). This Court likewise notes that for similar reasons, other courts have declined to recognize a claim for "educational malpractice" and have resisted "inquiry into the nuances of educational processes and theories." Ryan v. University of N.C. Hosps., 128 N.C. App. 300, 302 (1998); Ross v. Creighton Univ., 957 F.2d 410, 416 (7th Cir. 1992). However, those courts have also recognized potential state law claims against educational institutions related to specific promises that the educational institution allegedly failed to honor. Ryan, 128 N.C. App. at 302-03; Ross, 957 F.2d at 417. In the present case,

5

Plaintiff's UDTPA claim is not based on his internal interactions with faculty or support services staff while he was a student, or the content or nuances of the educational process. Instead, Plaintiff's UDTPA claim is based on Duke's alleged conduct and specific allegedly false statements made in attempting to induce him to enroll at Duke rather than Princeton. Cf. Mayes v. Moore, 419 F. Supp. 2d 775 (M.D.N.C. 2006) (noting that even though employer-employee relationships do not fall within the scope of the UDTPA, the employee could assert a UDTPA claim for conduct that occurred before the employment relationship's existence, specifically with respect to claims that the employer misled the prospective employee to induce him to take the employment). Defendant has not cited any cases that would preclude recognition of a potential UDTPA claim based on conduct by a university to attract students or based on specific allegedly false statements made to induce students to enroll. A recent decision of the North Carolina Court of Appeals, while not addressing the issue directly, assumed that such a claim could be raised with respect to representations and conduct in the admissions process, but found that the plaintiff in that case had failed to present sufficient evidence that the educational staff had knowingly made false representations or engaged in conduct that amounted to an inequitable assertion of power. Supplee v. Miller-Motte Bus. Coll., Inc., 768 S.E. 2d 582 (N.C. Ct. App. 2015); see also, e.g., Suhail v. University of the Cumberlands, __ F. Supp. 3d __, 2015 WL 3441111 (E.D. Ky. 2015) (noting that plaintiffs "directly challenge the University's tactics in recruiting students, a practice that is most certainly commercial or entrepreneurial"); Ramthun v.

6

Bryan-Career College-Inc., __ F. Supp. 3d __, 2015 WL 1243210 (W.D. Ark. Mar. 18, 2015) (considering class certification issues in case raising state fraud, misrepresentation, and unfair trade practice claims based on representations regarding transferability of credits); Guzman v. Bridgepoint Educ., Inc., 305 F.R.D. 594 (S.D. Cal. Mar. 26, 2015) (considering class certification with respect to unfair trade practice claims under various state laws based on alleged misrepresentations regarding tuition, financial aid, accreditation, and job placement). As in Supplee, this Court can consider as part of a motion for summary judgment whether Plaintiff has presented sufficient evidence of an unfair and deceptive trade practice to support his claims in this case, but dismissal of this claim at the Rule 12(b)(6) stage would be premature.[1]

Similarly, to the extent that Defendant also contends that Plaintiff has failed to present evidence that the representations were false or misleading, these are matters more appropriately considered after a period of discovery and on dispositive motions, rather than on a Motion to Dismiss. In this regard, the Court notes that Defendant contends that the UDTPA claim should be dismissed because "Plaintiff points to no evidence that, when the statements were made, Duke was attempting to trick or deceive him into enrolling at Duke." (Def. Mem. [Doc. #12] at 13.) However, any analysis of whether Plaintiff has presented

---

[1] Defendant contends that "Plaintiff does not allege a tangible impact on the marketplace beyond his own relationship with Duke." (Reply [Doc. #16] at 7.) However, to the extent Duke is involved in providing educational services in exchange for tuition, and recruiting students to its program, Duke is involved in the marketplace, and Plaintiff's claim is based on his interaction with Duke in that role.

sufficient evidence to support his claims must be undertaken after discovery on summary judgment motions.

    C.    Negligent Misrepresentation

As to Plaintiff's negligent misrepresentation claim, North Carolina courts have adopted the definition of negligent misrepresentation set forth in the Restatement (Second) of Torts, which provides as follows:

> One who, in the course of his business, or profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance on the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977). Stated differently, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." Raritan River Steel Co. v. Cherry, Bekaert & Holland, 322 N.C. 200, 206, 367 S.E.2d 609, 612 (1988) (citations omitted). Accordingly, "[t]o survive a motion to dismiss, the party raising the negligent misrepresentation claim must sufficiently allege (1) that it justifiably relied, (2) to its detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." River's Edge Pharm., LLC v. Gorbec Pharm. Servs., Inc., No. 1:10CV991, 2012 WL 1439133, at *20 (M.D.N.C. Apr. 5, 2012) (citing Simms v. Prudential Life Ins. Co. of Am., 140 N.C. App. 529, 532, 537 S.E.2d 237, 240 (2000)). Here, Defendant contends that Plaintiff's claims should be dismissed because Plaintiff fails to allege that

8

Defendant owed any duty to Plaintiff and because Plaintiff "fails to demonstrate [the] alleged misrepresentations were false . . . at the time they were made" (Def.'s Br. [Doc. #12] at 15).[2]

As to Plaintiff's ability to demonstrate that the alleged misrepresentations were false at the time they were made, that is an evidentiary inquiry inappropriate for resolution on a motion to dismiss. This conclusion is unaltered by Defendant's contention that the misrepresentations alleged relate to future events or promises and therefore must fail because their truth or falsity cannot be determined contemporaneous to the statements (see Def.'s Br. [Doc. #12] at 16-17). The relevant allegation in the Complaint states as follows:

> At Duke, Mr. Elmendorf met with staff in the Student Disability Access Office (Disability Access) and the Divinity School. The staff assured Mr. Elmendorf that Duke had experience accommodating individuals with Dyslexia and was fully prepared to provide him with accessible formats of all of his reading assignments, including those assignments distributed directly to students by professors.

(Compl. [Doc. #1] at 4.) Whether Duke "had experience" accommodating individuals with Dyslexia or "was prepared" to provide Plaintiff's reading assignment in accessible formats relate to past and present facts. Accordingly, Defendant's position provides no basis for dismissing Plaintiff's claim.

---

[2] Defendant originally argued that Plaintiff failed to plead his negligent misrepresentation claim with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure (see Def.'s Br. [Doc. #12] at 14), but abandoned that argument in light of case law from this district interpreting Fourth Circuit precedent to conclude that Rule 9(b) is inapplicable to negligent misrepresentation claims. See, e.g., Frank Lill & Son, Inc. v. Carter & Burgess, Inc., No. 1:10CV587, 2011 WL 7053627, at *2 (M.D.N.C. Oct. 6, 2011), adopted by, 2012 WL 159756 (M.D.N.C. Jan. 18, 2012) (discussing Baltimore Cnty. v. Cigna Healthcare, 238 F. App'x 914, 921 (4th Cir. 2007)).

With respect to duty owed, Defendant frames the issue as whether "the *unidentified individuals* who made the alleged misrepresentations" owed any duty to Plaintiff. (See Def.'s Br. [Doc. #12] at 17 (emphasis added).) However, Plaintiff brings his claim not against those individuals, but against Duke, and references Duke staff only as agents of the university. Accordingly, the appropriate inquiry appears to be whether Duke owed a duty to Plaintiff on the facts alleged. Given that framework, authority interpreting North Carolina law has allowed a negligent misrepresentation claim to proceed where the alleged misrepresentation induced the plaintiff to enter into an agreement where he or she otherwise would not have done so. See La Tortilleria, Inc. v. Nuestro Queso, LLC, No. 1:12CV408, 2014 WL 1322627, at *5 (M.D.N.C. Mar. 31, 2014), adopted by, 2014 WL 3484995 (M.D.N.C. July 11, 2014). Given the parallels between those circumstances and the instant facts as alleged in the Complaint and accepted as true, no basis exists to dismiss the instant claim at the pleading stage.[3] In sum, questions as to whether a duty existed, whether the statements alleged were false, whether reasonable care was exercised in their making, and whether Plaintiff justifiably relied on those statements, all raise issues that are not

---

[3] The Court notes, in addition, that in La Tortilleria, the court highlighted the defendant's pecuniary interest in the transaction at issue whereas, here, Defendant argues that Plaintiff's negligent misrepresentation claim must be dismissed because the "Complaint is void of any allegation that the unidentified staff [ ] made the alleged misrepresentations concerning accommodations to advance a pecuniary interest." (Def.'s Br. [Doc. #12] at 18.) However, Defendant again narrowly frames the inquiry as applying only to the individual staff as opposed to Duke more broadly. With the appropriate inquiry instead focused on Duke as a whole, the Court cannot conclude that Defendant had no pecuniary interest in Plaintiff's potential matriculation given the tuition at stake.

10

appropriately resolved at this stage.[4]  Accordingly, the Court concludes that Plaintiff's negligent misrepresentation claim should survive the instant Motion.

III.  CONCLUSION

Defendant's contentions raise issues that may be further addressed and considered on a motion for summary judgment, but would not warrant dismissal of Plaintiff's claims on the pleadings.

IT IS THEREFORE RECOMMENDED that Defendant's Motion to Dismiss Counts Three and Four of Plaintiff's Complaint [Doc. #11] be denied.

This, the 7th day of July 2015.

    /s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[4] In its Reply Brief, Defendant contends that Plaintiff cannot show "justifiable reliance" because "he has shown no other viable alternative." (Reply [Doc. #16] at 10.)  Because this argument was raised in the first time in Reply, Plaintiff has not had the opportunity to respond.  In any event, the Court concludes that questions of what Plaintiff will ultimately be able to "show" or establish are not properly resolved at this stage of the case.